IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

REPUBLICAN PARTY OF WISCONSIN and
BRIAN SCHIMMING,

        Plaintiffs,

v.

TONY EVERS, In his official capacity as Governor of
the State of Wisconsin,

MEAGAN WOLFE, In her official capacity as
Administrator of the Wisconsin Elections Commission,

and

JOSH KAUL, In his official capacity as Attorney
General for the State of Wisconsin,

        Defendants.

Case No.: 3:24-cv-867

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION**

The Republican Party of Wisconsin ("RPW") and its Chairman, Brian Schimming, want to ensure that the presidential electors appointed by RPW cast their ten electoral votes for President-Elect Donald J. Trump and Vice President-Elect J.D. Vance in accordance with all relevant and applicable state and federal laws. However, federal and state law directly conflict on when the presidential electors are supposed to meet to cast their votes. To resolve this conflict, the Plaintiffs request this Court issue a preliminary injunction declaring Wis. Stat. § 7.75(1) to be preempted by 3 U.S.C. § 7 and declare that Tuesday, December 17 as the legally correct date for the meeting of the presidential electors.

## FACTS

On November 29, 2024, the Wisconsin Elections Commission completed its canvass of the presidential election results and certified that Republican presidential candidate Donald J.

Trump and his vice-presidential running mate, J.D. Vance, received the greatest number of votes in the November 2024 presidential election. (Complaint, ¶¶15-17). Because of this determination, the Wisconsin Elections Commission identified that the 10 presidential electors nominated by RPW are the duly elected presidential electors for the State of Wisconsin. *Id*. One of these electors is the RPW Chairman, Brian Schimming. (Declaration of Brian Schimming, ¶3; Complaint, ¶7). The Party is in the process of organizing and planning for the meeting of the presidential electors, and has identified a conflict in state and federal laws on when they are supposed to meet and cast their electoral college votes. (Schimming Dec., ¶¶4-8; Complaint, ¶¶40-41).

Congress recently amended 3 U.S.C. § 7, which sets the date for when the presidential electors are supposed to meet in their respective states to cast their ballots. (Complaint, ¶¶24-26). The new statute identifies the first Tuesday after the second Wednesday in December as the date for the electors to meet. (Complaint, ¶26). This new federally mandated meeting date conflicts with Wis. Stat. § 7.75(1), which states that the presidential electors are to meet on the first Monday after the second Wednesday in December. (Complaint, ¶28). The Wisconsin Legislature attempted to remedy this conflict during the most recent legislative session, but the proposed bills never became law. *See* Wis. 2023 S.B. 852; Wis. 2023 A.B. 892.

RPW and Chairman Schimming have a strong interest in ensuring that their electoral votes are counted and not contested in Congress. (Schimming Dec., ¶9; Complaint, ¶42). Because the Defendants have not stated how they view the conflict between the state and federal law, Plaintiffs remain concerned that they may proceed with an incorrect presidential elector meeting date, which could in turn cause the electoral votes to be challenged or contested in Congress.

## LEGAL STANDARD

Plaintiffs seeking a preliminary injunction must demonstrate: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief does not need to demonstrate likelihood of success by a preponderance of evidence, rather it just needs to make a "strong" showing that it will prevail on the merits. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). This requires the party to demonstrate how it "proposes to prove the key elements of its case." *Id*.

## ARGUMENT

I. **Plaintiffs are Likely to Succeed on Their Claim that 3 U.S.C. § 7 Preempts Wis. Stat. § 7.75(1)**

The Constitution vests in Congress the authority to set the date on which the members of the Electoral College are to meet in their states to cast their votes for President and Vice President. U.S. Const. art. II, § 1, cl. 4. In full, the relevant clause states that: "The Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States." *Id*. Congress has acted on this grant of authority by establishing that:

> The electors of President and Vice President of each State shall meet and give their votes on the first *Tuesday* after the second Wednesday in December next following their appointment at such place in each State in accordance with the laws of the State enacted prior to election day.

3 U.S.C. § 7 (emphasis added). The use of the word "shall" connotes that Congress was creating a mandatory requirement that all the presidential electors throughout the country meet on the first Tuesday after the second Wednesday in December to cast their votes for the Electoral College. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (observing

that "shall" typically "creates an obligation impervious to … discretion"). This federally mandated date for the presidential electors directly conflicts with Wis. Stat. § 7.75(1), which also uses the mandatory "shall" and directs the presidential electors to meet on the first *Monday* after the second Wednesday in December. It is impossible for the presidential electors to comply with both the mandatory federal and state requirements. The federal requirement though must prevail over the state-imposed date.

When federal election procedures derived from a grant of authority from Congress conflict with state election laws, the state election laws are preempted and void. *Foster v. Love*, 522 U.S. 67, 74 (1997). The *Foster* case presents a prime example of why the Plaintiffs are likely to succeed on the merits that 3 U.S.C. § 7 preempts Wis. Stat. § 7.75(1). In *Foster*, the Supreme Court considered whether Art. I, § 4, cl. 1 ("the Elections Clause") preempted Louisiana's state election procedures. 522 U.S. at 69. The Elections Clause provides that elections for U.S. Congress are to be proscribed by the States but "Congress may at any time by Law make or alter such Regulations." U.S. Const. art. I, § 4, cl. 1. At the time, Louisiana had an election procedure which allowed federal candidates to run in an open primary before the Congressionally imposed November Election Day. *Foster*, 522 U.S. at 70. If a Congressional candidate achieved a majority of the vote during this pre-November primary, the candidate was declared the winner of the seat. *Id*. The Court held such an election procedure was invalid because concluding federal elections before the day proscribed by Congress violated the federal statutes which Congress had exclusive authority to set based on the vested power from the Constitution. *Id*. at 71-72.

This Court can also look to a recent decision from the Fifth Circuit, which held that Mississippi's post-Election Day ballot counting statute violated the Constitution's requirement that Election Day be held on one singular day. *RNC v. Wetzel*, 120 F.4th 200 (5th Cir. 2024).

While the *Wetzel* case focused on the Elections Clause under Article I, the reasoning is still applicable for the Electors Clauses under Article II, as these clauses—despite being in different Articles of the Constitution—share similarities to the extent that they are routinely interpreted together. *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 839 (2015) (Roberts, C.J., dissenting); *Bognet v. Sec'y of Commonwealth of Pa.*, 980 F.3d 336, 348–52 (3d Cir. 2020) (analyzing standing for Elections Clause and Electors Clause under the same test). The *Wetzel* court first recognized that there was no presumption against preemption because "election law '*always* falls within an area of concurrent state and federal power.'" *Id*. at 206 (quoting *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 n.6 (2013)). The court then recognized that a preemption analysis must begin with the text of the Constitution and the applicable federal statutes. *Id*. at 206. In the *Wetzel* case, the Fifth Circuit determined that Mississippi state statues—which allowed for absentee ballots to be received and counted five days after the Election Day set by federal law—were preempted by the Elections Clause of the Constitution and federal statutes. *Id*. at 203. The same analysis would apply to this controversy as well.

The Constitution clearly provides that Congress has the authority to determine when the presidential electors can meet. U.S. Const. art. II, § 1, cl. 4. Congress has acted on this grant of authority by establishing that the presidential electors shall meet on the first Tuesday after the second Wednesday in December. 3 U.S.C. § 7. This mandated meeting date explicitly conflicts with the meeting date identified in Wis. Stat. § 7.75(1). The statutes cannot coexist, as they are in direct conflict with each other. The presidential electors cannot comply with both requirements and, because Congress has the power under art. II, § 1, cl. 4 to set the date for when the electors shall meet, the federal statute must preempt and override Wis. Stat. § 7.75(1).

There is more than a strong likelihood that Plaintiffs will prevail on the merits that the presidential elector meeting date imposed by 3 U.S.C. § 7 preempts Wis. Stat. § 7.75(1). This first factor of the preliminary injunction consideration weighs heavily in favor of the Plaintiffs.

## II.   Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief from This Court

An ongoing constitutional violation constitutes irreparable harm as a matter of law. *Abrahamson v. Neitzel*, 109 F. Supp. 3d 1055, 1058 (W.D. Wis. 2015); *see also Preston v. Thompson,* 589 F.2d 300, 303 n.4 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm."). Wisconsin Stat. § 7.75(1) directly conflicts with 3 U.S.C. § 7, and if the electors proceed to follow state law they would be engaging in a constitutional violation. If the state statute is allowed to stand, Plaintiffs are left at an awkward crossroads—how to comply with both the state and federal statutes when following one means violating the other.

If the presidential electors follow the date as imposed by Wis. Stat. § 7.75(1), they will be violating the Constitution and the federal statutes. This risks their electoral votes either being contested or not counted when Congress meets to count the Electoral College votes on January 6, 2025. *See* 3 U.S.C. § 15(d)(2)(B)(ii) (statute identifying grounds for objections to electoral votes). Grounds for objecting to electoral votes from a state include if "The vote of one or more electors has not been regularly given." 3 U.S.C. § 15(d)(2)(B)(ii)(II). In the alternative, if the electors meet on the federal date as proscribed by 3 U.S.C. § 7, they would be violating Wis. Stat. § 7.75(1), which creates a possibility that they would face criminal or civil penalties for the statutory violation. (Complaint, ¶¶44, 46). The last option would be for RPW to instruct Schimming and the rest of the presidential electors to meet on both days to ensure compliance with the state and federal statutes. This option though is also not preferred, as the Party would be

6

putting forth dueling slates of votes which could also create an issue where the votes are contested under 3 U.S.C. § 15(d)(2)(B)(ii). None of these three options are acceptable, for any one of them could expose the electors to personal legal liability or risk the electoral votes being rejected when Congress counts them.

If this Court allows the state statute to remain in effect, the 1,697,626 Wisconsin citizens who voted for President-elect Donald J. Trump and his running mate, J.D. Vance, could have their votes nullified if the presidential electors are determined to have acted in contravention of federal or state law. The States have a strong interest in having their presidential electors reflect the will and choice of the citizens of the State. *See Chiafalo v. Washington*, 591 U.S. 578, 592-97 (2020) (discussing the historical practice of binding presidential electors to vote for the candidate selected by the citizens of the state). The Plaintiffs would be irreparably harmed if they were unable to fulfill that duty.

**III.     The Defendants Will Not Suffer Any Harm if Injunctive Relief is Granted**

It is unlikely that any of the Defendants would be able to identify a cognizable harm to themselves or the State of Wisconsin if this Court were to grant a preliminary injunction regarding the enforceability of Wis. Stat. § 7.75(1). The Wisconsin Elections Commission has not issued any guidance or an opinion on how to resolve this conflict between state and federal law. And the Governor and the Attorney General, as representatives of the People of Wisconsin, presumably prefer the electoral votes for the state to be cast in accordance with the law and unchallenged by members of Congress.

Furthermore, the Plaintiffs did not unduly delay in bringing this action as the Wisconsin Elections Commission only recently certified the statewide presidential results on November 29, 2024. (Complaint, ¶15). It was only after the election results were formally certified, and the

Republican presidential electors were appointed did this legal controversy between state and federal law become ripe for adjudication. Moreover, the claim is timely, as the meeting of electors is to take place on either December 16 or 17.

Even if plaintiffs show a law is likely unconstitutional, when assessing a request for a preliminary injunction, a court must still "weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one." *Harlan v. Scholz*, 866 F.3d 754, 758 (7th Cir. 2017). In this circumstance, the Plaintiffs' harm of their electoral votes being contested or not being counted strongly outweighs any harm that could be proffered by the Defendants (if any such harm exists).

## IV. It is in the Public Interest to Ensure that the State's Electoral Votes are Cast in Accordance with All Applicable Federal Laws

It is well within the public interest to ensure that the Wisconsinites tasked with serving as presidential electors accurately and legally cast their Electoral College votes for President-elect Donald J. Trump and Vice President-elect J.D. Vance. "Preventing ambiguity and confusion serves the state's interest in running efficient and orderly elections." *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 948 (W.D. Wis. 2016), *rev'd in part on other grounds sub nom.*, *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020). "The public interest in the maintenance of order in the election process is not only important, it is compelling." *Diaz v. Cobb*, 541 F. Supp. 2d 1319, 1335 (S.D. Fla. 2008). An order from this Court stating that Wis. Stat. § 7.75(1) is preempted by 3 U.S.C. § 7 will provide clarity to the presidential elector procedure and ensure public confidence that the ten electoral college votes for President-elect Trump and Vice President-elect Vance will be properly counted and unchallenged on January 6, 2025.

"[I]f the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not

harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012). Here, the public interest strongly weighs in favor of granting a preliminary injunction against the enforceability of Wis. Stat. § 7.75(1) as this controversy presents a clean case where the federal law must preempt the state law. An order from this Court saying so will ensure the citizenry's faith in the electoral process and our democratic institutions.

## CONCLUSION

This Court should grant Plaintiffs' motion for a preliminary injunction regarding the enforceability of Wis. Stat. § 7.75(1). The federal statute, 3 U.S.C. § 7, on its face preempts the state statute for when the presidential electors shall meet to cast their votes, and there will be no harm to the Defendants if the Court issues an order stating that Wis. Stat. § 7.75(1) is likely unconstitutional and thus unenforceable. Doing so will benefit the public interest as it will provide clarity to the presidential electors about when to meet and instill in the public faith in the electoral process.

Dated this 6th day of December, 2024.

            CRAMER MULTHAUF LLP
            Attorneys for Plaintiffs,


           By: *Electronically signed by Matthew M. Fernholz*
              Matthew M. Fernholz (SBN: 1065765)
              Charlie P. Hoffmann (SBN: 1129327)

CRAMER MULTHAUF LLP
1601 East Racine Avenue • Suite 200
P.O. Box 558
Waukesha, WI 53187-0558
(262) 542-4278
mmf@cmlawgroup.com
cph@cmlawgroup.com