IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

REPUBLICAN PARTY OF WISCONSIN
and BRIAN SCHIMMING,

    Plaintiffs,

v.                        Case No. 24-CV-00867-JDP

TONY EVERS, MEAGAN WOLFE, and
JOSH KAUL,

    Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

The Republican Party of Wisconsin and its chair seek a declaration about a conflict between state and federal law: when Wisconsin's presidential electors must meet to cast their electoral college votes to elect the President of the United States. Wisconsin law directs presidential electors to meet this year on December 16, 2024. The Electoral Count Reform Act (ECRA), a new federal law passed in 2022, requires presidential electors in all States to meet and cast their votes on December 17, 2024. Plaintiffs seek a declaration and preliminary injunctive relief.

This Court should dismiss this case for lack of federal jurisdiction, for three reasons. First, there is no adversity: Defendants agree that ECRA's

required meeting date preempts Wisconsin law. Second, Plaintiffs lack standing: they allege no harm traceable to Defendants or that is redressable by them. And third, Plaintiffs' preemption claim is merely a defense to what they allege are potential state law criminal or civil penalties. That is not a basis for Article III jurisdiction.

## BACKGROUND

The electoral college decides who is elected President of the United States. Several months before each presidential election, each State selects slates of presidential and vice-presidential elector candidates who will vote for their respective political party's candidate should they win that State's presidential vote. After the presidential election, the winning party's electors meet and cast ballots for the President and Vice President whom they were selected to represent. After those meetings, Congress holds a joint session to count each State's electoral votes.

Wisconsin law provides a specific date on which the presidential electors must meet:

> The electors for president and vice president shall meet at the state capitol following the presidential election at 12:00 noon the first Monday after the 2nd Wednesday in December.

Wis. Stat. § 7.75(1). This year, the first Monday after the second Wednesday in December is Monday, December 16, 2024.

Prior to 2022, Wisconsin's deadline aligned with federal law: 3 U.S.C. 7 previously provided for the electors to meet on the first Monday after the second Wednesday in December. *See* 3 U.S.C. § 7 (2020).

In 2022, Congress amended 3 U.S.C. §§ 1–22 by enacting the Electoral Count Reform Act, which clarifies the process for casting and counting electoral college votes in presidential elections. Among other provisions, ECRA requires every State's electors to meet on the same, specific day on the first *Tuesday* after the second Wednesday in December:

> The electors of President and Vice President of each State shall meet and give their votes on the first Tuesday after the second Wednesday in December next following their appointment at such place in each State in accordance with the laws of the State enacted prior to election day.

3 U.S.C. § 7. This year, the first Tuesday after the second Wednesday is December 17, 2024.

Following the passage of ECRA, the Wisconsin Senate and Assembly introduced companion bills to align Wisconsin law with federal law. (Dkt. 1 ¶¶ 29−31); *see* Wis. 2023 S.B. 852; Wis. 2023 A.B. 892. The bills did not pass out of committee, but at the time, the meeting-of-electors amendment gained bipartisan support. At the time the bills were considered, Governor Evers supported a statutory change to align Wisconsin law with ECRA.

Because the bills did not reach the floor or the Governor, Wisconsin law remains unchanged. As applied to this year's calendar, the required date for

3

the Wisconsin presidential electors to meet varies by one day from federal law: state law requires them to meet on December 16, and federal law requires them to meet on December 17.

Plaintiffs filed this declaratory judgment under 28 U.S.C. §§ 2201–2202, seeking a declaration that Wis. Stat. § 7.75(1) is preempted by 3 U.S.C. § 7. (Dkt. 1.) They also seek an injunction against defendants Governor Evers, Meagan Wolfe, the Administrator of the Wisconsin Elections Commission, and Attorney General Josh Kaul. Their Complaint does not assert that any of these officials takes part in the casting or counting of electoral ballots or has any prospective role in that process. (Dkt. 1.)

## LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) tests the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The standard for alleging jurisdiction is the same as alleging the merits of a claim. The question is whether it is possible to infer that plaintiffs can establish federal jurisdiction based on the allegations in the complaint. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015).

4

**ARGUMENT**

Plaintiffs' case should be dismissed because the Court lacks jurisdiction. Defendants agree with Plaintiffs that ECRA controls over Wisconsin law with respect to the meeting date of presidential electors, and that it stands in conflict with state law. Because the parties have no legal adversity, there is no live case or controversy to support Article III jurisdiction. Plaintiffs also lack standing: their claim is not traceable to Defendants or redressable by them. And there is no Article III jurisdiction for a preemption claim where Plaintiffs would assert it only as a defense to a state law claim.

**I.     There is no jurisdiction because there is no adversity.**

    **A.     Article III requires a live case or controversy, including an adverse legal relationship between the parties.**

Article III of the Constitution permits federal courts to decide only actual ongoing cases or controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). A case must present a "genuine, live dispute between adverse parties." *Carney v. Adams*, 592 U.S. 53, 58 (2020). The dispute must be "definite and concrete," and the parties must have an adverse legal relationship. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). This requirement reflects the fact that federal courts must resolve existing legal disputes, not issue advisory opinions. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994).

Declaratory judgment actions satisfy the Article III case-or-controversy requirement when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). The Declaratory Judgment Act provides a procedural remedy but confers no new jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950).

When parties agree on how a case should be resolved, a court cannot suspend Article III's requirements, and must determine whether it has jurisdiction to grant relief. *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 397 (7th Cir. 2019); *United States v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir. 1999). Similarly, parties may not stipulate to expand federal jurisdiction by reaching an agreement such as a consent decree or stipulated judgment. *Lopez-Aguilar*, 924 F.3d at 397; *Accra Pac, Inc.*, 173 F.3d at 633. For a court to grant declaratory relief, a live case or controversy must exist at every moment of the litigation. *Accra Pac,* 173 F.3d at 633.

### B. Federal law preempts state law regarding the date that presidential electors must meet.

Plaintiffs' Complaint asserts that the conflicting dates for the elector meeting under federal and Wisconsin law present a plain case of preemption. They are correct.

#### 1. Federal laws providing for the date of the presidential electors meeting preempt contrary state laws.

The preemption doctrine is rooted in the Supremacy Clause of the Constitution, which provides that the Constitution and federal laws "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Federal law takes precedence over state law, and any state law that "interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (citation omitted).

The Constitution explicitly authorizes Congress to establish uniform electoral college procedures and other relevant aspects of federal elections. The Electors Clause empowers Congress to set the date and time for presidential electors to cast their electoral votes:

> The Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States.

U.S. Const. art. II, § 1, cl.4.

ECRA's requirements for the manner of holding a federal election take precedence over a conflicting state law. As long ago as *McPherson v. Blacker*, 146 U.S. 1, 40 (1892), the U.S. Supreme Court concluded that a federal law establishing a date for presidential electors to meet and vote preempts state law setting a different meeting date. The federal election laws then in place instructed presidential electors to meet and vote on one date, while Michigan law required electors to meet on an earlier date. *Id*. The Court concluded that the Michigan law "in this respect it is in conflict with the act of congress, and must necessarily give way." *Id*. at 41.

Modern preemption doctrine, which classifies preemption as field, conflict, or express, achieves the same result. *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). Field preemption applies when federal law fully occupies a subject matter and leaves no room for the states to act. *Id*. Conflict preemption exists when it is "impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id*. (citation omitted).

Both field and conflict preemption apply to conflicting dates for presidential electors to meet. As to field preemption, where Congress sets a date for presidential electors to meet and cast their electoral college votes, it

has fully occupied that legal question.[1] As to conflict preemption, if a State provides for a different date than the federal date, presidential electors cannot comply with both laws.

### 2. ECRA preempts Wisconsin's statute providing for a different presidential elector meeting date.

ECRA preempts Wis. Stat. § 7.75(1) here.

Under *McPherson*, Wisconsin law "in this respect it is in conflict with the act of congress, and must necessarily give way." 146 U.S. at 41. Under the modern formulation of field preemption, ERCA's designation of an exact date preempts the field on that issue, leaving no reasonable opportunity for Wisconsin to set a different time for electors to convene. And under conflict preemption, Wisconsin's electors cannot choose to meet either on December 16 or 17 without contravening one of the statutes.

Because Wisconsin's law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, it "must yield." *Gade*, 505 U.S. at 108. Wisconsin law is preempted.

---

[1] Courts have recognized that the term "field preemption" suggests a broad scope, but that a field deemed preempted by federal law may also be narrowly defined. *Farina v. Nokia Inc.*, 625 F.3d 97, 121 n.25 (3d Cir. 2010)

### C. There is no Article III jurisdiction because the parties agree that Wisconsin law is preempted.

Here, there is no dispute between the parties for this Court to resolve, and thus no Article III jurisdiction. All parties agree that ERCA's presidential elector meeting date, December 17, 2024, preempts the contrary date under state law. There is thus no adversity or genuine live dispute.

Plaintiffs have alleged no facts suggesting that any Defendant opposes holding the presidential electors' meeting and vote on a date other than December 17 or plans to (or could) take any steps adverse to Plaintiffs' interests in using ECRA's required date.

Because there is no adversity between the parties, there is no live case or controversy under Article III, and the Court lacks jurisdiction to provide relief.[2]

### II. Plaintiffs lack standing because their claims are not traceable to Defendants or redressable by them.

There is no Article III jurisdiction for a second reason: Plaintiffs' claims are not traceable to the named defendants nor redressable by them.

Article III also requires a plaintiff to have standing to bring suit. The "irreducible constitutional minimum" of standing is an injury-in-fact traceable

---

[2] Defendants are not compromising or settling this action, and thus Wis. Stat. § 165.25(6) does not apply.

to the conduct complained of and redressable by a favorable ruling from a federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Here, Plaintiffs' Complaint fails to explain in any way how their alleged injury is traceable to the Defendants' conduct, or how Defendants would play any role in determining whether the Wisconsin electors' ballot will be counted by Congress when it meets.

The only allegation even mentioning any activity of the defendants relates to a state law criminal case brought by the Attorney General against individuals who advised people who asserted they were electors after the 2020 election when they were not. (Dkt. 1 ¶ 46.) Plaintiffs fail to allege that state laws criminalizing that type of conduct—advising an alternative slate of electors that would vote for a candidate who was not certified as the winner of the state—would criminalize a meeting of the presidential electors for a candidate who was certified as the winner if they met on the wrong day. An injunction against Defendants will not redress Plaintiffs' alleged concerns (Dkt. 1 ¶¶ 46, 49) about state criminal or civil penalties.

III. **Plaintiffs cannot use the Declaratory Judgment Act to obtain jurisdiction where their assertion of preemption goes only to a defense to state law.**

Plaintiffs fail to establish Article III jurisdiction for a third reason: based on the pleadings, their preemption claim is merely a defense to a potential

11

state law claim against them. That is not a basis for a federal court to hear a case.

The Declaratory Judgment Act confers no additional jurisdiction upon the federal courts. Where a declaratory judgment plaintiff asserts a claim that is in the nature of a defense to a threatened or pending coercive action, the question is whether "the character of the threatened action, and not of the defense," is federal in nature. *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952). So "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16 (1983) (citation omitted). Applying those principles, the Seventh Circuit held in *Northeast Illinois Regional Commuter Railroad Corp. v. Hoey Farina & Downes*, 212 F.3d 1010, 1014 (7th Cir. 2000), that there is no Article III jurisdiction where a plaintiff seeks a federal court declaration that state law is preempted: "if the plaintiff cannot get into federal court by anticipating what amounts to a federal defense to a state-law cause of action, he also should not be able to use the Declaratory Judgment Act to do so by asserting what is really a preemptive federal defense as the basis of his complaint."

The same is true here. Plaintiffs' Complaint says they need a declaration that state law is preempted so that they will not be at risk of civil or criminal

penalties from meeting on the wrong day. (Dkt. 1 ¶ ¶ 46–49.) That is not a basis for Article III jurisdiction.

**CONCLUSION**

For the reasons explained above, the Court should dismiss Plaintiffs' Complaint.

Dated this 11th day of December 2024.

        Respectfully submitted,

        JOSHUA L. KAUL
        Attorney General of Wisconsin

        s/ Charlotte Gibson
        CHARLOTTE GIBSON
        Assistant Attorney General
        State Bar #1038845

        Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218
(608) 294-2907 (Fax)
gibsoncj@doj.state.wi.us

***additional counsel for Governor*:**
States United Democracy Center
Christine P. Sun*
506 S. Spring St. #13308
Los Angeles, CA 90013
christine@statesuniteddemocracy.org
Tel: 615-574-9108

Zack Goldberg*
45 Main St., Suite 320
Brooklyn, NY 11201
zack@statesuniteddemocracy.org
Tel: 917-656-6234

**Pro Hac Vice* Application Forthcoming